

# The Attorney General of Texas

February 21, 1980

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main. Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth. Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza. Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Charles Evans, Chairman
House Committee on Government
  Organizations
P. O. Box 2910
Austin, Texas 78769

Opinion No. MW-142

Re: Authority of the Texas Department of Community Affairs to enter into an interagency contract with the Governor's Committee on Aging.

Dear Representative Evans:

You ask two questions concerning an interagency contract entered into by the Governor's Committee on Aging and the Texas Department of Community Affairs. Your first question involves state law, while your second question involves federal law.

You first ask:

> May the Texas Department of Community Affairs and the Governor's Committee on Aging enter into an interagency contract under which the department performs the following services for the committee: 'general administrative services, including fiscal and accounting services, legal services, personnel services, public information services, management auditing services, and other administrative services?'

We believe both entities have authority to contract under the Interagency Cooperation Act, V.T.C.S. art. 4413(32). The Governor's Committee on Aging is also described as a "state agency." See Human Resources Code, § 101.025(a). The Interagency Cooperation Act authorizes any state agency, including a department, to enter into written contracts with other agencies of the state. V.T.C.S. art. 4413(32), § 3. The Department and the Committee have in fact entered into a contract to perform the services detailed in your question. It has been approved by the State Purchasing and General Services Commission pursuant to section 4 of article 4413(32), V.T.C.S., in exercise of responsibilities transferred to it from the Board of Control pursuant to section 11.01 of article 601b, V.T.C.S., enacted by the 66th Legislature, Acts 1979, 66th Leg., ch. 773, at 1908, 1956.

Section 3 of the Interagency Cooperation Act authorizes contracts for furnishing "necessary and authorized special or technical services, including the services of employees, the services of materials, or the services of equipment," a broad grant of authority. The validity of an interagency agreement is for the State Purchasing and General Services Commission in the first instance. See Attorney General Opinion H-446 (1974). In reviewing administrative action, the courts apply an abuse of discretion standard. Railroad Commission v. Galveston Chamber of Commerce, 145 S.W. 573 (Tex. 1912). In view of the broad language describing the subject matter of interagency contracts, we believe the action of the State Purchasing and General Services Commission in approving the contract is valid.

Your second question is as follows:

> If employees of the Texas Department of Community Affairs who are not employed under a merit system perform these services for the Governor's Committee on Aging under an interagency contract, is the committee ineligible under federal law to receive federal funds for programs for older persons?

The Governor's Committee on Aging is the state agency designated to handle federal programs relating to the aging that require action within the state and that are not the specific responsibility of another state agency. Human Resources Code, § 101.025(a). The Federal Older Americans Act, 42 U.S.C. Sections 3001 – 3037a, requires that the agency receiving federal funds under the Act operate under a state plan which provides for a merit system of personnel administration. 42 U.S.C. § 3027(a)(4). Laws, rules, regulations, and policy statements effectuating such methods of personnel administration are part of the State plan, and are set out in 45 C.F.R. Part 1321. See 45 C.F.R. § 1321.37(a).

If certain portions of the State plan are to be administered by an agency other than the one designated for that purpose, the methods of administration required by federal regulation are still applicable. 45 C.F.R. § 1321.35(b). Whenever the Commissioner of H.E.W. finds that there is a failure to comply substantially with any provision of the Older Americans Act in the administration of the state plan, he shall, after notice and an opportunity to be heard, stop federal funds. 45 C.F.R. § 1321.20(a). Based on a reading of these regulations, we conclude that the Committee incurs a risk of having federal funds cut off when it contracts to have administrative services performed by persons who are not employed under a merit system. Of course, any decision to interrupt funds is at the option of the federal government, and action may be taken only after the Committee is given notice and an opportunity to be heard. We note for your information that an opinion on the validity of this contract under federal law can be obtained from the Federal Office of Personnel Management.

## S U M M A R Y

The Governor's Committee on Aging has authority under state law to enter into a contract with the Texas Department of Community Affairs for the performance of administrative services. The performance of such services must be consistent with federal regulations in order to avoid interruption of federal funds to the committee.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Susan Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
Bill Campbell
Bob Gammage
Susan Garrison
Rick Gilpin